A03A2035. NEIGHBORHOOD ASSISTANCE CORPORATION OF AMERICA v. DIXON.
(593 SE2d 717)

ELLINGTON, Judge.

This case arises out of Dorothy Dixon's suit against a nonprofit corporation, Neighborhood Assistance Corporation of America ("NACA"), as a result of her lender's foreclosure on her home. The trial court denied summary judgment to NACA on Dixon's negligence claim, and we granted NACA's application for an interlocutory appeal of this ruling. Because we find an exculpatory clause signed by Dixon bars her negligence claim, we reverse.

In reviewing the grant or denial of summary judgment, we apply a de novo standard of review and consider the evidence with all reasonable inferences therefrom in favor of the party opposing summary judgment. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996).

The record shows that NACA is a nonprofit corporation that helps low and moderate income persons obtain mortgages and loan modifications in order to purchase a home or retain an existing home. Beginning in May 1997, Dixon repeatedly sought NACA's assistance after she fell behind on her mortgage payments. At that time, she signed a "Disclosure Statement and Informational Handout," which provided as follows:

> by my signature[ ] below I . . . acknowledge that I understand the risks involved in buying, financing and owning my own home and I agree that I will not hold the Program Sponsor, its directors, officers, staff or consultants responsible for any losses, costs, expenses or damages that may result from

> my participation in, and/or your purchase and/or financing of my home through the Program.

The handout identified NACA as the Program Sponsor.

In 2001, Dixon again sought NACA's assistance to modify her mortgage loan and lower her monthly payments. A NACA representative obtained financial paperwork from Dixon and allegedly told her "everything looked very good" and "not to worry." According to Dixon, NACA instructed her to wire a $1,500 payment to her lender, but did not tell her that her home would be foreclosed upon if her lender did not receive it immediately.

In her suit against NACA for negligence and Fair Business Practices Act ("FBPA") violations, Dixon claims her lender foreclosed because NACA negligently caused her to wire the money too late to save her home from foreclosure. NACA moved for summary judgment, asserting that the exculpatory clause signed by Dixon barred her claims and that the FBPA did not apply. The trial court granted NACA's motion to dismiss the FBPA claim, but denied summary judgment on the negligence claim based on its conclusion that the release did not contain an "express waiver of liability for acts of negligence."

1. On appeal, NACA contends that the exculpatory clause precludes Dixon's negligence claim. We agree.

> It is the paramount public policy of this state that courts will not lightly interfere with the freedom of parties to contract. A contracting party may waive or renounce that which the law has established in his or her favor, when it does not thereby injure others or affect the public interest. Exculpatory clauses in Georgia are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence.

(Citations and punctuation omitted.) *My Fair Lady of Ga. v. Harris*, 185 Ga. App. 459, 460 (364 SE2d 580) (1987). Additionally, an exculpatory clause does not need to expressly use the word "negligence" in order to bar a negligence claim. See *McClesky v. Vericon Resources*, 264 Ga. App. 31, 33 (1) (589 SE2d 854) (2003) (exculpatory clause applied to "any and all claims [or] lawsuits"); *Flanigan v. Executive Office Centers*, 249 Ga. App. 14, n. 2, 16 (546 SE2d 559) (2001) (exculpatory clause applied to "any claim for damages"). Dixon's claim that NACA's alleged negligent instructions to her during her participation in NACA's program caused her to lose her home clearly falls within the scope of the exculpatory clause she signed. As a result, the trial

court erred when it denied summary judgment on Dixon's negligence claim.

2. Dixon asserts, however, that the exculpatory clause should not prevent her claim because (a) NACA's acts were wilful and wanton; and (b) it violates public policy.

(a) In Georgia, exculpatory clauses will not preclude a claim based on wilful and wanton misconduct. *McClesky v. Vericon Resources*, 264 Ga. App. at 33 (1). Even so, there is no evidence in this case to support a finding that NACA's alleged failure to properly advise Dixon constituted wilful and wanton misconduct.

(b) As to whether the exculpatory clause violated public policy, OCGA § 1-3-7 provides:

> Laws made for the preservation of public order or good morals may not be dispensed with or abrogated by any agreement. However, a person may waive or renounce what the law has established in his favor when he does not thereby injure others or affect the public interest.

Dixon contends the exculpatory clause in this case is against the public interest because a typical consumer would not be aware that, by signing NACA's disclaimer, they were waiving NACA's liability for negligence, and this could result in a detriment to consumers. We find no merit in this argument. The clause unambiguously states the release from responsibility and "is neither illegal, immoral, nor in contravention of the law[s] of this state." *Lovelace v. Figure Salon*, 179 Ga. App. 51, 53 (1) (345 SE2d 139) (1986).

*Judgment reversed. Ruffin, P. J., and Phipps, J., concur.*

DECIDED JANUARY 22, 2004.

*Downey & Cleveland, Rodney S. Shockley*, for appellant.
*Lucinda Perry*, for appellee.